IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIANNA SHEREE GILES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-CV-618-PJC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Claimant, Brianna Sheree Giles ("Giles"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Giles appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Giles was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, the current Acting Commissioner of the Social Security Administration, is substituted for Michael J. Astrue as Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Claimant's Background**

Giles was 24 years old at the time of the hearing before the ALJ on December 16, 2010. (R. 25, 29). Giles testified that she graduated from high school and completed two years of college. (R. 32).

Giles testified that she had "a lot of mood swings," and she thought that she sometimes judged that she was being picked on at her previous jobs. (R. 39-40). Her mood swings would go from being "really high" to being really depressed or angry. (R. 40). She had previously been treated by a psychiatrist who prescribed medication, but she had quit taking any medication in February or March 2010. (R. 40-41). When she had a "low" mood swing, she became tired and uninterested in activities. (R. 43-44). She didn't want to leave the house, and she didn't want to deal with people. *Id.* During these times, she wanted to deal only with her mother. (R. 44). Giles had been hospitalized at Laureate two years earlier when she made a suicide attempt by overdosing on prescription medications. (R. 44-45).

If Giles didn't have to drive her mother somewhere, she might wake up at 11:30 a.m. and watch some television. (R. 45). She only showered if she was going somewhere. *Id.* She might do some chores, such as cleaning her room or washing dishes, if she felt up to it. (R. 45-46). She would take a nap around 3:00 p.m. or 4:00 p.m. (R. 46). She and her mother had three dogs, and she fed them every evening. (R. 45-46). Giles's mother had heart surgery in August 2010, and Giles had been providing transportation for her since then. (R. 46). Giles' mother had cardiac therapy three days a week, and Giles took her to those appointments as well as any doctor's appointments her mother had. *Id.*

Giles had previously enjoyed sports, video games, and reading, but she had lost interest in those activities. (R. 47). Giles said that her appetite was diminished, and she only ate once a

day. (R. 48). She had periods when she would only sleep for three or four hours a night, and periods when she would sleep six-to-eight hours a night. (R. 48-49). Giles had periods when she had energy and could "do a bunch of chores," but overall her energy level was less than when she was in high school. (R. 49). Giles said that she had panic attacks perhaps once every two weeks, and an attack could last for two or three hours. *Id.* When she had a panic attack, she felt nervous and shaky, and she had trouble breathing. (R. 49-50). She felt like she wanted to cry, she wanted to be alone, and she became nauseated. *Id.* Sometimes a panic attack was triggered by being around a crowd of people, but sometimes the attacks just happened. (R. 50). Giles testified that she also had asthma attacks about twice a month. (R. 50-51).

Giles apparently saw a physician's assistant at Warren Clinic on August 28, 2006, and was assessed with depression with suicidal ideation. (R. 328). She was advised to go to Laureate for inpatient care. *Id.* Giles was seen at urgent care at Warren Clinic on October 12, 2006 for an intentional self-inflicted cut. (R. 327).

Records show that Giles had psychotherapy appointments with a licensed clinic social worker at Laureate Psychiatric Clinic and Hospital ("Laureate") from January 2007 to April 2009. (R.269-92). In January 2007, the numerical code used for Giles's diagnosis corresponded to major depressive disorder, single episode, moderate.[2] (R. 292). In April 2009, the diagnosis was major depressive disorder, recurrent, moderate. (R. 269).

---

[2] Numerical codes are from the International Classification of Diseases, 9th edition - Clinical Model coding system, and this is a medically-recognized ranking of diagnoses. *See Little Company of Mary Hosp. v. Shalala*, 24 F.3d 984, 986-87 (7th Cir. 1994); *see also* Am. Psych. Assn., Diagnostic and Statistical Manual of Mental Disorders 860 (Text Rev. 4th ed. 2000) (hereinafter "DSM IV").

Giles received inpatient care at Laureate from December 18 to December 22, 2008. (R. 236-54). She had worsening depression and thoughts of wanting to die. (R. 243). Her Axis I[3] diagnoses on discharge were bipolar disorder, not otherwise specified; panic disorder with agoraphobia; and social phobia. *Id.* Her Global Assessment of Functioning ("GAF")[4] was 60, with a highest GAF of 70 in the past year. *Id.* Her prescriptions to continue after discharge were Eskalith, Seroquel, Wellbutrin, clonazepam, and lisinopril. *Id.*

Agency examining consultant Dennis A. Rawlings, Ph.D. completed a mental status examination of Giles on November 17, 2009. (R. 343-51). After Dr. Rawling's review of Giles' history and his examination, his Axis I diagnoses were bipolar II disorder, most recent episode depressed; early onset social phobia; and obsessive compulsive disorder. (R. 350). On Axis II, he diagnosed obsessive compulsive personality disorder. *Id.* He assessed her current GAF as 55, with a GAF for the past year of 40-45. *Id.* He said that her prognosis was good with treatment. *Id.* He recommended that she continue her current medical care and psychiatric treatment, and he said that Giles should be referred to vocational rehabilitation. *Id.*

---

[3] The multiaxial system "facilitates comprehensive and systematic evaluation." DSM IV at 27.

[4] The GAF score represents Axis V of a Multiaxial Assessment system. *See* DSM IV at 32-36. A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id.* at 32. The GAF scale is from 1-100. A GAF score between 21-30 represents "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas." *Id.* at 34. A score between 31-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* A GAF score of 41-50 reflects "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." *Id.*

Agency nonexamining consultant Sally Varghese, M.D. completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity Assessment on January 5, 2010. (R. 352-69). On the Psychiatric Review Technique form, Dr. Varghese noted for Listing 12.04 that Giles had a mood disturbance with depressive syndrome. (R. 359). For Listing 12.06, Dr. Varghese noted Giles's anxiety-related disorder. (R. 361). For Listing 12.08, she noted a personality disorder. (R. 363). For the "Paragraph B Criteria,"[5] Dr. Varghese found that Giles had a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace, with no episodes of decompensation. (R. 366). In the "Consultant's Notes" portion of the form, Dr. Varghese noted Giles's 2008 hospitalization. (R. 368). She summarized Giles's activities of daily living, and she summarized Dr. Rawling's report in some detail, including his diagnoses. *Id.*

In Dr. Varghese's Mental Residual Functional Capacity Assessment, she found that Giles had a moderate limitation in two areas: her ability to work in coordination with or proximity to others without being distracted by them; and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 352-53). Dr. Varghese found Giles to be markedly limited in her ability to interact appropriately with the

---

[5] There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") § 12.00C. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

general public. (R. 353). He found no other significant limitations. (R. 352-53). In narrative comments, Dr. Varghese found that Giles could interact with coworkers most of the time on a superficial basis and could relate to the public in an incidental manner. (R. 354). She said that Giles could perform simple and complex tasks. *Id.*

### Procedural History

Giles filed applications in July 2009 for Title II disability insurance benefits and for Title XVI supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (R. 139-42). The applications were denied initially and on reconsideration. (R. 64-72, 76-81). A hearing before ALJ John W. Belcher was held on December 16, 2010, and Giles amended her alleged onset of disability to July 21, 2010. (R. 25-57). By decision dated March 18, 2011, the ALJ found that Giles was not disabled. (R. 10-21). On August 30, 2012, the Appeals Council denied review of the ALJ's findings. (R. 1-6). Thus, the decision of the ALJ represents a final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability

claim. 20 C.F.R. § 404.1520.[6] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.*

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.*, (*quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

---

[6] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

**Decision of the Administrative Law Judge**

The ALJ found that Giles met insured status requirements through June 30, 2010. (R. 12). At Step One, the ALJ found that Giles had not engaged in substantial gainful activity since her amended alleged onset date of July 21, 2010. *Id.* At Step Two, the ALJ found that Giles had severe impairments of asthma, affective disorder, anxiety disorder, and personality disorder. (R. 13). At Step Three, the ALJ found that Giles's impairments did not meet any Listing. *Id.*

The ALJ determined that Giles had the RFC to perform medium work with nonexertional limitations of avoiding exposure to dust, fumes, toxins, and poor ventilation and of no more than superficial contact with co-workers and supervisors and no contact with the general public. (R. 14). At Step Four, the ALJ found that Giles could perform her past relevant work. (R. 19). As an alternative finding, at Step Five, the ALJ found that there were jobs in significant numbers in the national economy that Giles could perform, considering her age, education, work experience, and RFC. (R. 19-20). Thus, the ALJ found that Giles was not disabled from July 21, 2010 through the date of the decision. (R. 21).

**Review**

Giles argues that the ALJ's RFC was flawed because she cannot maintain employment. Giles also argues that the ALJ's credibility assessment was not adequate. Regarding the issues raised by Giles, the undersigned finds that the ALJ's decision is supported by substantial evidence and complies with legal requirements. Therefore, the ALJ's decision is affirmed.

**The ALJ's RFC Determination**

Giles argues that while she can obtain employment, she is not able to maintain work. Plaintiff's Opening Brief, Dkt. #15, pp. 3-6. She cites to her testimony about her inability to get along with coworkers and supervisors and her inability to maintain a regular schedule. She also cites testimony of the vocational expert (the "VE") that Giles's testimony indicated that she could not keep a job.[7] Giles then reviews her hospitalization at Laureate and notes that this occurred after she had been fired from a job. She cites to other references in her treatment records that indicate she was having trouble with supervisors. She then reviews Dr. Rawlings's report and his GAF scores of 55 and 40-45. She argues that all of this evidence indicates that she cannot maintain employment.

The difficulty with Giles's argument is that this Court's inquiry is not whether *her* claim has evidence that supports it. The Court's inquiry is whether *the ALJ's decision* is supported by substantial evidence. *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1301 (10th Cir. 2011) (affirming ALJ's decisions regarding child's asthma and credibility of testimony because they were supported by substantial evidence). Here, the ALJ discussed all of the evidence, including Giles's testimony regarding her problems maintaining employment. (R. 14-19). The ALJ said that he gave "great weight" to the opinion of Dr. Rawlings, as indicated by his assignment of a

---

[7] Giles's argument that the testimony of the VE showed that she could not maintain employment is not persuasive. As discussed in detail in this Order, the undersigned finds that the ALJ's assessment that Giles was less than fully credible is supported by substantial evidence. Given the supported finding of the ALJ that Giles was not fully credible, the VE's testimony based on Giles's testimony is obviously not relevant. *See Barrett v. Astrue*, 340 Fed. Appx. 481, 488 (10th Cir. 2009) (unpublished) (testimony of VE regarding limitations that were not ultimately included in the ALJ's RFC was not relevant); *Roulston v. Shalala*, 46 F.3d 1152 *1 (10th Cir. 1995) (unpublished) (ALJ did not ignore unfavorable testimony that was elicited by claimant's attorney and based on subjective complaints that the ALJ ultimately found not credible).

GAF score of 55. (R. 17-18). The ALJ also said he gave "great weight" to the opinions of the nonexamining consultant Dr. Varghese. (R. 18). The opinions of Dr. Rawlings and Dr. Varghese were substantial evidence that the ALJ was entitled to rely upon. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (nonexamining consultant's opinion was an acceptable medical source which the ALJ was entitled to consider and which supported his RFC determination); *Leach v. Astrue*, 470 Fed. Appx. 701, 704 (10th Cir. 2012) (unpublished) (ALJ's RFC determination was supported by substantial evidence when it was based in part on reports of both examining and nonexamining consultants).

Giles's arguments regarding whether she can maintain employment are essentially a request that this Court reweigh the evidence, emphasizing the evidence that supports her disability claim, while discounting the evidence that does not support it. The Court must decline this invitation. *Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013). While Giles's case might be susceptible to conclusions that differ from those made by the ALJ, it is not the Court's role to make findings in the first instance.

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and brackets omitted). The Court will not engage in impermissible reweighing of the evidence or substitution of its judgment for that of the Commissioner. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

**Credibility Assessment**

Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2002). In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186. "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

In addressing Giles's credibility, the ALJ first stated that there were no opinions of treating or examining physicians indicating that Giles was disabled or had restrictions greater than those found in his RFC determination. (R. 18). Then, the ALJ noted that Giles had stopped treatment at Laureate and had stopped taking medication. *Id.* The extent of the claimant's efforts to obtain relief is a legitimate specific reason for a finding of credibility. *Kepler*, 68 F.3d at 391; *Hagar v. Barnhart*, 102 Fed. Appx. 146, 148 (10th Cir. 2004) (unpublished) (ALJ was entitled to consider that, if the claimant's symptoms were as debilitating as asserted, she would have sought additional treatment).

The ALJ further noted that there was evidence that Giles's medications were effective and that Giles was not "entirely compliant in taking prescribed medications." (R. 18). A claimant's lack of compliance with treatment is a legitimate factor in finding that the claimant's claim of disabling pain is not credible. *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000);

*see also Sims v. Apfel*, 172 F.3d 879 *3 (10th Cir. 1999) (unpublished) (failure to follow doctors' instructions was a factor in determining credibility).

The ALJ then recounted Giles's activities of daily living and said that they were not as restricted as would be expected in someone whose mental limitations were disabling. (R. 19). Finally, the ALJ noted that there was evidence that Giles's reasons for not working were not solely due to her claimed disability. *Id.*

All of these were legitimate and specific reasons for finding Giles less than fully credible, and these reasons were closely linked to substantial evidence. Faced with this assessment, Giles first argues that the absence of a treating physician opinion is not evidence, citing *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993). The undersigned agrees that if the ALJ had relied solely on the absence of a treating physician opinion to find Giles less than fully credible, his credibility assessment would have been far weaker. Here, however, the ALJ mentioned the lack of treating physician opinion evidence as only one factor among many. *See Polson v. Astrue*, 508 Fed. Appx. 705, 707-08 (10th Cir. 2013) (unpublished) (Tenth Circuit approved credibility assessment based partially on the fact that claimant's physicians had not placed any functional limitations on her that precluded sedentary work).

Second, Giles states that her mental condition justifies her failure to comply with medical treatment. Plaintiff's Opening Brief, Dkt. #15, p. 7. She cites to case law from several courts outside the Tenth Circuit for the idea that mentally ill people do not always use good judgment in seeking medical help or in complying with prescription medications. *Id.* While the Court has some sympathy for this concept, here Giles is asserting that she is unable to work due to her mental conditions while at the same time she is not complying with treatment which she acknowledged helped those same mental conditions. Under these circumstances, the ALJ was

not prohibited from considering Giles's noncompliance and failure to seek treatment as factors supporting a finding that Giles was less than fully credible. *See, e.g., Zaricor-Ritchie v. Astrue*, 452 Fed. Appx. 817, 824 (10th Cir. 2011) (unpublished) (ALJ could take into account claimant's failure to seek treatment even though she testified she was too depressed to do so).

Giles also argues that she should not be penalized for her financial inability to afford her treatment and her medications. The Court agrees that the ALJ should have directly addressed this portion of Giles's testimony[8] when he addressed her treatment and medications. *See Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) (unpublished) (faulting ALJ for failing to comment on evidence that claimant could not afford medications). Had the ALJ included a discussion of this evidence, he would still have been entitled to conclude that her failure to seek treatment was a factor supporting his finding of reduced credibility because the evidence was mixed on this question. Moreover, even if this factor was omitted from the ALJ's justification of his finding of reduced credibility, the other factors would still be substantial evidence supporting the ALJ's decision. Under these circumstances, the ALJ's failure to explicitly discuss Giles's testimony that she could not afford treatment or prescription medications was harmless error. *See Keyes-Zachary*, 695 F.3d at 1173 (ALJ's failure to mention alleged side effect was harmless error given circumstances of case).

---

[8] At the hearing, Giles was asked: "So, why did you stop going to Laureate and seeing the psychiatrist and taking your medications?" Her response: "I felt better. I was also a little strapped for cash, even though I was working. I didn't feel like I could afford it, but I felt better, so." (R. 43).

"In sum, the ALJ closely and affirmatively linked his adverse credibility finding to substantial evidence in the record and did not employ an incorrect legal standard. 'Our precedents do not require more, and our limited scope of review precludes us from reweighing the evidence or substituting our judgment for that of the agency.'" *Zaricor-Ritchie*, 452 Fed. Appx. at 824, *citing Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (further quotations omitted).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is **AFFIRMED**.

Dated this 30th day of October 2013.

_____
Paul J. Cleary
United States Magistrate Judge